UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| **OSF HEALTHCARE SYSTEM,**<br><br>    Plaintiff,<br><br>v.<br><br>**BOARD OF TRUSTEES OF THE SEIU HEALTHCARE ILLINOIS HOME CARE & CHILD CARE FUND, et al.,**<br><br>    Defendants. | Case No. 19-1341-MMM |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Amended Motion to Dismiss (D. 27[1]) and Motion for Leave to File Reply (D. 31). For the reasons that follow, Defendants' Motion for Leave to File Reply is GRANTED IN PART AND DENIED IN PART, and Defendants' Motion to Dismiss is GRANTED. The Clerk of Court is directed to close this case.

### JURISDICTION

The Court has federal question jurisdiction over this matter under 28 U.S.C. § 1331, as Plaintiff's claims arise under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, *et seq*. Venue in this Court is appropriate under 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claims occurred in Peoria, Illinois.

### BACKGROUND

Plaintiff OSF Healthcare System is a healthcare provider authorized and licensed to provide medical services in Illinois. (D. 1 at 1-2.) Between January and March of 2017, Plaintiff

---

[1] Citations to the underlying case docket are abbreviated as (D. _ .)

provided medical care to an individual who was insured by the Personal Assistant Health Fund for the SEIU Healthcare IL Home Care Health Plan ("Plan"). *Id.* at 2. The total cost of that care was over $500,000. *Id.* The Plan is administered by Defendants Board of Trustees of the SEIU Healthcare Illinois Home Care & Child Care Fund ("Fund"). (D. 27 at 1.) The Plan contains a comprehensive anti-assignment provision[2], which states:

> You cannot assign your rights as a Plan Participant to a provider or other third party or in any way alienate your claim for benefits. Any attempt to assign those rights or in any way alienate a claim for benefits will be void and will not be recognized by the Fund for that purpose. The Fund will treat any document you are asked by a provider to sign to assign your rights as a Plan Participant or to alienate a claim for benefits to a provider, to be only an authorization for direct payment by the Fund to the provider. For example, the Fund will NOT allow you to assign your provider any rights as a Participant in the Plan, including, but not limited to, the right to appeal a claim denial or the right to receive documentation concerning claims. In the event that the Fund does receive a document claiming to be an assignment of benefits, the Fund will send payments for the claims to the provider, but will send all claim documentation, such as an Explanation of Benefits, and appeal procedures directly to you as the Claimant. In no event shall receipt by a provider of payment or documentation concerning claims be accepted by the Plan as a waiver of the prohibition on assignments of benefits. You may file an appeal of a claim submitted by a provider that was denied in whole or in part and may authorize a representative to file such an appeal on your behalf and you or your representative may use information provided by a provider to support your appeal.

(D. 31-2 at 45.)

In January, February, and March of 2017, Plaintiff submitted claims for medical services it rendered to its patient to Defendants. (D. 1 at 4.) To date, Defendants have made direct payments to Plaintiff in the amount of $44,642. *Id.* In October 2017, Plaintiff submitted a claims appeal and request for plan documentation to Defendants concerning the outstanding balance on its claims. (D. 1-10 at 1-2.) Shortly thereafter, Defendants denied both of its requests. (D. 1-11 at 1.) Plaintiff now contends that despite its reasonable, good faith attempts to acquire plan

---

[2] The anti-assignment provision, as well as a complete copy of the Plan, is provided in Defendants' Reply. Because the Plan and its anti-assignment provision are central to the allegations in the complaint, the documents are included in the Court's overall analysis. *See Duferco Steel Inc. v. M/V Kalisti*, 121 F.3d 321, 324 n.3 (7th Cir. 1997).

documentation, Defendants have refused to comply. (D. 1 at 15.) Plaintiff seeks a complete copy of the patient's healthcare plan, all documentation related to the processing of the patient's health claims (including a copy of Defendants' benefit determinations), and statutory damages, costs, and attorney's fees related to Defendants' refusal to send the requested documentation. *Id.*

## PROCEDURAL HISTORY

On October 23, 2019, Plaintiff filed its complaint outlining the aforementioned claims. (D. 1.) On February 21, 2020, Defendants filed an amended Motion to Dismiss the Complaint and a corresponding memorandum of law. (D. 27, 28.) On February 27, 2020, Plaintiff filed its response and corresponding memorandum of law. (D. 29, 30.) On March 12, 2020, Defendants filed a Motion for Leave to File Reply and attached their Reply. (D. 31.) On March 20, 2020, Plaintiff filed its objection to Defendants' Motion for Leave to File a Reply. (D. 32.) This Order follows.

## LEGAL STANDARD

Motion to Dismiss Under Rule 12(b)(1)

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(1) challenges the district court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The Plaintiff bears the burden of proof in establishing federal jurisdiction. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). "Where evidence pertinent to subject matter jurisdiction has been submitted, the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists." *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999) (internal quotation marks and citation omitted). "The presumption of correctness that [the court] accord[s] to a complaint's allegations falls away on the jurisdictional issue once a defendant proffers evidence that calls the court's jurisdiction into question." *Id.* at 856 (citation omitted).

Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint, not its merits. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss, the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). A motion to dismiss "can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). "Documents referred to in, but not attached to, a plaintiff's complaint that are central to its claim may be considered in ruling on a Rule 12(b)(6) motion if they are attached to the defendant's motion to dismiss." *Duferco Steel Inc. v. M/V Kalisti*, 121 F.3d 321, 324 n.3 (7th Cir. 1997). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility is context specific and requires the court to draw on its judicial experience and common sense. *McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011). While the court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor, it is not obligated to ignore facts in the complaint that undermine plaintiff's claim or to assign weight to unsupported conclusions of law. *R.J.R. Servs., Inc., v. Aetna Cas. and Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989).

## DISCUSSION

The issues at hand—in various permutations—have been raised before district courts within our circuit, and before the Circuit Court of Appeals, on numerous occasions. *See, e.g.,*

*Griffin v. TeamCare*, 909 F.3d 842 (7th Cir. 2018); *Penn. Chiropractic Ass'n v. Indep. Hosp. Indem. Plan, Inc.*, 802 F.3d 926, 928 (7th Cir. 2015); *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609 (7th Cir. 2002); *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698 (7th Cir. 1991); *Cent. States, Se. and Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148 (7th Cir. 1989); *OSF Healthcare Sys. v. Matcor Metal Fabrication*, No. 16-1052, 2017 WL 1740022 (C.D. Ill. May 3, 2017); *OSF Healthcare Sys. v. Nestle USA, Inc.*, No. 15-1316, 2015 WL 11023789 (C.D. Ill. Dec. 2, 2015); *OSF Healthcare Sys. v. Boyd Benefits*, No. 12-1413, 2014 WL 12736152 (C.D. Ill. Jan. 22, 2014). As such, the issues at hand are not ones of first impression even though the fact scenario upon which they rely has yet to be comprehensively addressed by the Seventh Circuit.

Defendants move to dismiss Plaintiff's ERISA claims arguing Plaintiff lacks standing to sue as a beneficiary because an unambiguous anti-assignment provision in the patient's Plan bars suit. (D. 27 at 2.) They also argue that district courts within this circuit have rejected the theory that direct payments to healthcare providers from the plan itself create an enforceable assignment of benefits or confer ERISA beneficiary status on the provider. (D. 28 at 8-9.) Defendants conclude by asserting that even if Plaintiff had standing, its claims should be dismissed because Plaintiff is not entitled to the information it seeks. *Id.* at 12-14.

In response, Plaintiff argues that the Court should deny Defendants' dismissal request because Defendants failed to append the Plan's anti-assignment provision to their Motion to Dismiss.[3] (D. 29 at 1-2.) Plaintiff also argues that it is a beneficiary to the Plan under ERISA because the Plan made direct payments to it. (D. 30 at 5.) It asserts that once a Plan "makes a determination" that a provider may be paid for its claims via direct payment, the Plan has made a

---

[3] Although Defendants failed to append a copy of the provision to their original Motion to Dismiss, Plaintiff argues the language in the provision is "not determinative o[f] whether [it] has standing . . . as an ERISA . . . beneficiary." (D. 32 at 3.) Plaintiff also asserts, albeit incorrectly, should Defendants append any documentation to their Motion to Dismiss, the Court must construe the Motion as one for summary judgment. *Id.* at 2-3.

5

concession that the provider is a beneficiary under ERISA, notwithstanding any anti-assignment provision in the Plan itself. *Id.* at 6-7. Plaintiff also argues that the assignment of benefits by its patient does not preclude it from also maintaining beneficiary status since it received benefits from the Plan in the form of payment. *Id.*

Despite Plaintiff's arguments to the contrary, the Court finds that the unambiguous anti-assignment provision in the Plan renders Plaintiff's assignment of benefits ineffectual and that direct payment to the provider alone cannot confer beneficiary status on it under ERISA.

## I. Claims within ERISA's Zone of Interests

Section 1132 of ERISA provides a civil enforcement mechanism by which parties can seek redress for violations of the Act in federal court. 29 U.S.C. § 1132 (2014). It empowers *participants* and *beneficiaries* to sue in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" *Id.* § 1132(a)(1)(B). ERISA defines a "participant" as "any employee or former employee of an employer, or any member or former member of an employee organization, who is . . . eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization[.]" *Id.* § 1002(7). ERISA defines a "beneficiary" as a "person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit" under the plan. *Id.* § 1002(8).

Defendants acknowledge that Plaintiff received an assignment of benefits from a participant and requested plan documentation. (D. 28 at 1.) They argue, however, that the Plan's anti-assignment provision voids the assignment and eliminates Plaintiff's right to bring suit under ERISA as a beneficiary by virtue of the alleged assignment. *Id.* at 1-2. Defendants also argue that

direct payment alone is insufficient to confer beneficiary status on Plaintiff under the Act. The Court agrees and addresses each of these arguments in turn.

### A. Anti-Assignment Provision

In 2014, this Court issued its decision in *OSF Healthcare System v. Boyd Benefits*, No. 12-1413, 2014 WL 12736152 (C.D. Ill. Jan. 22, 2014). In *Boyd*, OSF brought action under ERISA against Boyd Benefits for unpaid medical claims related to OSF's medical care for one of its patients. 2014 WL 12736152, at *1. The patient was insured under Boyd's healthcare plan and the plan had an anti-assignment provision which prohibited a participant from assigning any benefits under the plan without the plan or administrator's consent. *Id.* OSF argued that the participant's wife irrevocably assigned to it all the rights that she had against any insurance company or third-party for payment of the hospital bills. *Id.* at 2. OSF also asserted that it had standing to appeal and file its claim due to the direct payment that it received from Boyd. *Id.* In denying Boyd's motion to dismiss, and citing *DeBartolo v. Plano Molding Co.*, No. 01-8147, 2002 WL 1160160, at *1 (N.D. Ill. May 29, 2002) ("*DeBartolo II*") and *Kennedy*, 924 F.2d at 701, the Court held:

> This Court is unable to conclude from the record whether or not OSF is an assignee; however, based on the record before it[,] the Court finds that the allegations in the Complaint establish enough possibility of direct payment by the Defendant's plan that would vest this Court with subject-matter jurisdiction, notwithstanding an anti-assignment clause.

*Id.* at *4.

A year later, the Court issued its decision in *OSF Healthcare System v. Nestle USA, Inc.*, No. 15-1316, 2015 WL 11023789 (C.D. Ill. Dec. 2, 2015). In *Nestle*, OSF brought action under ERISA against Nestle USA for unpaid medical claims related to OSF's medical care for one of its patients. 2015 WL 11023789, at *1. The patient was insured under Nestle USA's healthcare plan.

7

It is unclear from the record whether the plan contained an anti-assignment provision and, even if it had, Nestle failed to raise the provision as a defense. *Id.* OSF argued that a partial payment made to it directly from the health plan was a waiver of the plan's anti-assignment clause and a clear recognition of the assignment. *Id.* OSF also argued that since it received direct payment from the plan, it had standing to sue as a beneficiary under ERISA. *Id.* In denying Nestle USA's motion to dismiss, and citing *Boyd*, *DeBartolo II*, and *Kennedy*, the Court held:

> Plaintiff is a beneficiary in this matter because . . . the participant[ ] assigned his rights under the Health Plan to Plaintiff. . . . Furthermore, the Court stands by its decision in [*Boyd*] in that pursuant to *Kennedy* the possibility of direct payment is enough for a federal court's jurisdiction, thus an actual payment definitely suffices to enable a federal court to exercise jurisdiction. Therefore, based on the record before it[,] the Court finds the allegations in the Complaint establish a direct payment on behalf of the Health Plan to Plaintiff that would vest this Court with subject-matter jurisdiction, notwithstanding an anti-assignment clause. Additionally, [b]ecause the [Health Plan] allow[ed] for direct payment, [Plaintiff's] claim as an assignee cannot be deemed 'frivolous' ... [and Plaintiff] has standing to bring this claim.

*Id.* at 4 (internal quotation marks and citations omitted).

In reviewing the scenario at hand, recognizing the unambiguous anti-assignment provision in the Plan and Defendants' valid invocation thereof, and in, arguably, charting a new path to its conclusion, the Court finds that Plaintiff fails to fall within ERISA's zone of interests and dismisses its claims under the Act. A brief review of Seventh Circuit caselaw in this area is necessary to explain the Court's decision. In *Kennedy v. Connecticut General Life Insurance Co.*, 924 F.2d 698 (7th Cir. 1991), the Seventh Circuit recognized that "[b]ecause ERISA instructs courts to enforce strictly the terms of plans, an assignee cannot collect unless he establishes that the assignment comports with the plan." *Id.* at 700. While the *Kennedy* Court suggested that "subject-matter jurisdiction depends on an arguable claim, not on success[,]" it qualified its

8

suggestion by adding that "if the language of the plan is so clear that any claim as an assignee must be frivolous" then jurisdiction must be lacking. *Id.*

*Kennedy* was followed by *Morlan v. Universal Guaranty Life Insurance Co.*, 298 F.3d 609 (7th Cir. 2002). In *Morlan*, the court reiterated its holding in *Kennedy* that "a properly assigned ERISA claim makes the assignee a participant or beneficiary within the meaning of the Act." *Id.* at 615. It also instructed that "claims for welfare benefits, not limited to health-care benefits, are assignable, provided of course that the ERISA plan itself permits assignment, assignability being a matter of freedom of contract in the absence of a statutory bar." *Id.*

*Morlan* was followed by *Pennsylvania Chiropractic Ass'n v. Independence Hospital Indemnity Plan, Inc.*, 802 F.3d 926 (7th Cir. 2015). In *Pennsylvania Chiropractic*, a group of chiropractors brought suit alleging they were beneficiaries under ERISA. *Id.* at 928. The Seventh Circuit noted that while the providers appeared to fulfill the requirements of standing, their claims fell outside the zone of interests regulated by ERISA. *Id.* at 928. The providers' claims fell outside ERISA's zone of interests because they did not meet the definition of beneficiaries as outlined by the Act. *Id.* The court observed that it "need not distort the word 'beneficiary' in order to enable medical providers to contract for and enforce procedural rules about how insurers pay for medical care." *Id.* at 930. It ended the decision by vacating the district court's judgment in the providers' favor and calling into question their ability to bring suit altogether. *Id.*

*Pennsylvania Chiropractic* was followed by *Griffin v. TeamCare*, 909 F.3d 842 (7th Cir. 2018). In *Griffin*, a healthcare provider sued her patient's insurance plan via the plan's administrator for a copy of the plan description and documents related to the administrator's determination of benefits. *Id.* at 844. Before receiving treatment, the patient assigned the provider rights under the plan to "pursue claims for benefits, statutory penalties, [and] breach of fiduciary

9

duty[.]" *Id.* In what was viewed by the provider as a stalling tactic, the administrator referred the provider to a third-party to appeal the plan's fee determinations of her services. *Id.* While the administrator did provide a copy of the plan description, it failed to include any related fee schedules or tables. *Id.* at 844-45. In reversing the dismissal of the provider's ERISA claims and finding the provider adequately alleged she was eligible for additional benefits and statutory damages, the Seventh Circuit observed:

> ERISA defines "beneficiary" as "a person designated by a participant ... who is or may become entitled to a benefit [under an employee benefit plan]." *An assignee designated to receive benefits is considered a beneficiary and can sue for unpaid benefits under section 1132(a)(1)(B) . . .* Bringing [ ] suit (or an administrative appeal) requires access to information about the plan and its payment calculations—here, how [the administrator] determined the usual, reasonable, and customary rate. It follows that [the provider] also must be a beneficiary able to sue when she is denied requested information.

*Id.* at 847 (emphasis added) (citations omitted).

The Court finds that the language in the Plan bars assignment, and that the language is so clear that Plaintiff's claims as an assignee are frivolous. *Kennedy* instructed that "subject-matter jurisdiction depends on an arguable claim," 924 F.2d at 700, and qualified its instruction with an exception that applies here. *Morlan* clarified the exception in *Kennedy* by adding that claims for welfare benefits are assignable, "provided of course that the ERISA plan itself permits assignment[.]" 298 F.3d at 615. *Pennsylvania Chiropractic* emphasized the caution that courts must take in analyzing the scope of ERISA claims by reversing the lower court and vacating the judgment in favor of the alleged beneficiaries. *Griffin* reinforced the uncontested conclusion that a *valid* assignee may sue for unpaid benefits as a beneficiary under the Act.

Since ERISA instructs courts to strictly enforce the terms of the plan, 29 U.S.C. § 1104(a)(1)(D); *Kennedy*, 924 F.2d at 700, the Court fails to envision how permitting Plaintiff to continue its suit under ERISA would be consistent with this circuit's guidance, the civil

enforcement mechanism within the Act, *id.* § 1132(a)(1)(B), or the increasing trend of district and circuit court opinions which hold that anti-assignment provisions in ERISA plans may preclude a provider from bringing action under the Act. *See, e.g., Univ. Spine Ctr. v. Aetna, Inc.*, 774 F. App'x 60 (3d Cir. 2019); *Dialysis Newco, Inc. v. Cmty. Sys. Grp. Health Plan*, 938 F.3d 246 (5th Cir. 2019); *Griffin v. United Healthcare of Ga. Inc.*, 754 Fed. Appx. 793 (11th Cir. 2018); *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868 (9th Cir. 2017); *Neurological Surgery, P.C., v. Travelers Co.*, 243 F. Supp. 3d 318 (E.D. New York); *Univ. of Wis. Hosps. and Clinics Auth. v. Aetna Health & Life Ins. Co.*, 144 F. Supp. 3d 1048 (W.D. Wis. 2015); *DeBartolo v. Blue Cross/Blue Shield of Ill.*, No. 01-5940, 2001 WL 1403012 (N.D. Ill. Nov. 9, 2001) ("*DeBartolo I*"); *Neurological Res., P.C. v. Anthem Ins. Cos.*, 61 F. Supp. 2d 840, 843 (S.D. Ind. 1999). Accordingly, Defendants' Motion to Dismiss on this ground is GRANTED.

### B. Receipt of Direct Payment

Notwithstanding the Plan's anti-assignment provision, Plaintiff offers an alternate theory of beneficiary status which relies solely on its direct payment from the Plan. Plaintiff states:

> Having made a direct payment to OSF, the ERISA Health Plan made a determination that OSF was entitled and designated to receive benefits under the ERISA Health Plan. Further, the ERISA Health Plan's direct payment to OSF acknowledges an assignment by the ERISA Health Plan or that the terms of the plan allow direct payment of benefits to OSF or both. The ERISA Health Plan cannot legally pay benefits to one that is not entitled to receive them. Once the ERISA Health Plan makes a determination that a provider is entitled to direct payment, the ERISA Health Plan has made a determination that the provider is a beneficiary of the ERISA Health Plan by virtue of providing a direct benefit to the provider in the form of payment for the services rendered.

(D. 30 at 6.)

Plaintiff's assertions boil down to an argument that regardless of a plan's anti-assignment provision, or whether a valid assignment of rights has been established, should a provider receive direct payment from a plan, or should a plan itself allow for direct payment to a provider—under

any clause—then the provider is deemed a beneficiary under ERISA and can bring suit in federal court. To bolster its argument, Plaintiff relies on discrete language from Seventh Circuit decisions, and from district court opinions which may have misinterpreted that language, to allow it to proceed with its claims as an ERISA beneficiary.

In *Ruttenberg v. U.S. Life Insurance Co.*, 413 F.3d 652, 661 (7th Cir. 2005), Andrew Ruttenberg, a disabled commodities trader, filed suit against his insurance company (U.S. Life) for its repeated denials of his disability claims. *Id.* at 655-56. U.S. Life filed a motion to dismiss, arguing Ruttenberg's state law claims were preempted by ERISA. *Id.* at 657. U.S. Life also questioned whether Ruttenberg was a full-time employee as required by his policy. *Id.* In response to U.S. Life's preemption argument, Ruttenberg argued that as an independent contractor, he was neither a participant nor a beneficiary under ERISA and, therefore, his insurance policy was not an ERISA plan. *Id.*

The district court ruled against Ruttenberg, finding that his policy was governed by ERISA and that his state-law claims were preempted by the Act. *Id.* The court dismissed his complaint with leave to refile an ERISA cause of action, which he did. *Id.* Discovery ensued with the court ultimately granting summary judgment in U.S. Life's favor on the theory that Ruttenberg failed to meet the policy's requirement that he maintain full-time employment by working at least 30 hours a week. In essence, the court had denied Ruttenberg's claims for disability benefits from a policy to which he had been making consistent premium payments. Presumably, this was a blow to Ruttenberg because the policy provided for $10,000 a month in disability benefits. *Id.* at 656. Moreover, due to the procedural posture of his claims, the court operated under the assumption that Ruttenberg was not an employee of U.S. Life and could not otherwise be considered a plan participant. *Id.* at 660.

On appeal, the Seventh Circuit was forced to adopt the same assumption. *Id.* In the alternative, the court was left with determining whether Ruttenberg qualified as a beneficiary to his policy under ERISA. *Id.* at 660-61. It ruled that ERISA appeared to establish two distinct classes of *individuals* who might be beneficiaries: those designated by a participant, and those that were designated to receive benefits by the plan itself. *Id.* at 661. The court concluded that Ruttenberg was in the latter group, but it failed to fully explain the reasoning behind its conclusion. Instead, the court observed:

> We join the weight of authority in concluding that an ERISA "beneficiary" may be a person designated to receive benefits under the terms of the plan itself; the definition is not limited to individuals designated by a "participant" to receive benefits. The district court did not err in determining that [Plaintiff] qualified as a "beneficiary" of the U.S. Life policy for ERISA purposes and correctly found his state law claims preempted by the federal statute.

*Id.* at 661–62 (internal citations omitted). Arguably, the court could have come to its conclusion that Ruttenberg was a beneficiary because he was an *individual* who may have otherwise been entitled to the benefits of his plan (e.g., as a plan participant). After all, Ruttenberg had relied on his policy to deliver benefits should he become disabled. He also maintained his end of the bargain by making the requisite premium payments. Under this scenario, an expansive take on the Act's definition of beneficiary appears plausible.

Plaintiff, however, takes the Seventh Circuit's conclusion in a different direction and broadens further the definition of beneficiary under the Act. Plaintiff suggests that because it received a "benefit" in the form of payment on one of its patient's claims from the participant's Plan, the Plan itself has "determined" it is a beneficiary. Plaintiff asserts, as a beneficiary, it is entitled to certain information, including Plan documentation and statutory fees. This Court, like many others, is unwilling to distort ERISA's definition of beneficiary to enable Plaintiff to enforce procedural rules about how insurers pay for medical care simply by the fact that it received

payment from an insurance provider. *Pa. Chiropractic*, 802 F.3d at 930; *see also DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 875–76 (9th Cir. 2017) ("Neither a designation in a health benefit plan nor an assignment by a patient allowing a health care provider to receive direct payment for health services entitles a health care provider to 'benefits' on its own behalf. Providers are therefore not ERISA 'beneficiar[ies].' "); *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 258 (2d Cir. 2015) ("[Plaintiff's] claim to payment for covered services is a function of how [the insurance company] reimburses healthcare providers under the Benefit Plan. That right to payment does not a beneficiary make."); *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1241 (11th Cir. 2001) ("[W]hile this court has allowed healthcare providers to use derivative standing to sue under ERISA, it has only done so when the healthcare provider had obtained a written assignment of claims from a patient who had standing to sue under ERISA as a 'beneficiary' or 'participant.' "); *Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 627 (6th Cir. 2001) ("The fact that plaintiff may be entitled to payment from defendants as a result of her clients' participation in an employee plan does not make her a beneficiary for the purpose of ERISA standing."); *OSF Healthcare Sys. v. Matcor Metal Fabrication (Ill.) Inc.*, No. 16-1052, 2017 WL 1740022, at *4 (C.D. Ill. May 3, 2017) ("The Court concludes that the Plan's generic commitment to direct payment to providers is not sufficient to assign [the patient's] appeal rights to OSF or otherwise make it an ERISA beneficiary.").

The Court is also unpersuaded by any of Plaintiff's remaining arguments on the matter. It will note, however, that two of its previous rulings stand in contrast to today's decision. In *Boyd* and *Nestle*, this Court adopted language from *DeBartolo II* which relied on *Kennedy* to support the conclusion that "the possibility of direct payment in a health benefits plan is enough to establish subject-matter jurisdiction, notwithstanding an anti-assignment clause." 2002 WL 1160160, at *1.

14

That language, specifically, the "notwithstanding an anti-assignment clause," is not reflective of the holding in *Kennedy* and is not universally applicable to ERISA claims. Accordingly, Defendants' Motion to Dismiss on the ground that direct payment alone is insufficient to confer beneficiary status on a medical provider is GRANTED.

## II.     Defendants' Motion for Leave to File Reply

District courts are entitled to "considerable discretion in interpreting and applying their local rules[.]" *Cuevas v. United States*, 317 F.3d 751, 752 (7th Cir. 2003). The Local Rules of this District dictate that "[n]o reply to the response is permitted without leave of Court. CDIL-LR 7.1(B)(3). "Typically, reply briefs are permitted if the party opposing a motion has introduced new and unexpected issues in his response to the motion, and the Court finds that a reply from the moving party would be helpful to its disposition of the motion; the Court does not typically permit the moving party to file a reply in order to introduce new arguments or evidence that could have been included in the motion itself, or to rehash the arguments made in motion." *Shefts v. Petrakis*, No. 10-1104, 2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011).

In their Motion for Leave to File Reply, Defendants request that the Court grant them leave to reply due to confusion over the exact language in the Plan and which version of the Plan controls the present case. (D. 31 at 3.) Defendants also argue they should be permitted to file a reply to refute Plaintiff's unexpected argument that "this Court's" decision in *OSF Healthcare Systems v. Matcor Metal Fabrication (Ill.) Inc.,* No. 16-1052, 2017 WL 1740022 (C.D. Ill. May 3, 2017), was vacated and is therefore inapplicable to the scenario at hand. *Id.* at 4. Notably, Defendants append a complete copy of the Plan to their proposed reply. (D. 31-2 at 3-94.) Plaintiff argues that Defendants' Reply should not be allowed because the Reply contains extraneous documents, which the Court cannot consider in a Rule 12(b)(6) motion to dismiss. (D. 32 at 2-3.)

Defendants' Motion is GRANTED IN PART AND DENIED IN PART.  The Court finds that Defendants' Reply, specifically their copy of the governing Plan, would be extremely helpful to the Court's disposition of the Motion.  Defendants are GRANTED permission to file their Reply and its attachments, as the Plan was referred to in, but not attached to, Plaintiff's Complaint and is central to its claim.  *See Duferco Steel Inc.*, 121 F.3d at 324 n.3. However, any argumentation concerning *Matcor Metal*, 2017 WL 1740022, in the Reply will be summarily ignored.

The *Matcor* decision was issued by another court in this district and has no binding effect on this Court's determination of the matters at hand.  *See Harris v. Bd. of Governors of Fed. Reserve Sys.*, 938 F.2d 720, 723 (7th Cir. 1991) (holding "the only effect of . . . vacatur is to deprive those orders of any preclusive effect in subsequent litigation. It does not deprive them of such stare decisis effect as they may have[.]").  Accordingly, Defendants' request to recognize the *Matcor* arguments in their Reply is DENIED.

## CONCLUSION

For the aforementioned reasons, Defendants' [31] Motion for Leave to File Reply is GRANTED IN PART AND DENIED IN PART, and Defendants' [27] amended Motion to Dismiss is GRANTED.  Plaintiff's Complaint is DISMISSED in its entirety.  The Clerk of Court is directed to close this case.

Entered on April 27, 2020.          /s/ Michael M. Mihm
                                  Michael M. Mihm
                                  United States District Judge